Filed 4/30/14  In re Alaina C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ALAINA C., a Person Coming Under the Juvenile Court Law. | |
| | D064846 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3574) |
| v. | |
| EMILIO C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant Emilio C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Susan Lake, under appointment by the Court of Appeal, for Minor.

Emilio C. appeals a juvenile court order terminating his reunification services regarding his daughter, Alaina C. He contends that the court erred by finding that reasonable services were provided to him, and the court abused its discretion by terminating his reunification services while continuing services for Alaina's mother, Teresa C. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned under Welfare and Institutions Code section 300, subdivision (b)[1] on behalf of four-year-old Alaina, alleging that Teresa was mentally ill and that she had been placed on a psychiatric hold after being stopped by law enforcement for driving with Alaina on her lap. Teresa told the officer who conducted the traffic stop that she was teaching Alaina how to drive. The petition further alleged that Emilio was unable to protect and supervise Alaina.

Teresa had been acting strangely on the day of the incident. When a deputy sheriff was called to the home, Teresa refused to talk with him or the apartment manager, but said she was "the queen" and offered him a toy queen. However, the deputy determined that Alaina appeared well cared for and left the apartment. Deputies later stopped Teresa as she was driving her car with Alaina sitting unrestrained on her lap. Emilio was working in Northern California at the time, and had left Alaina in Teresa's care.

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise specified.

Teresa had previously been diagnosed as suffering from chronic paranoid schizophrenia. Two years before the incident, Emilio had taken her to a hospital because she was having delusions. At that time, the Agency advised Emilio to seek custody of Alaina because of concerns about her safety in Teresa's care, but Emilio maintained that Teresa was stable when she took her medication and said that she was doing better. In the view of hospital staff, however, Teresa's mental condition was deteriorating. She spent a month in the hospital before she responded successfully to medication and was released.

At the jurisdictional hearing on August 16, 2012, the court found the allegations of the petition to be true. On October 31, 2012,[2] the court declared Alaina a dependent child, removed her from her parents and ordered her placed in foster care. Teresa's case plan required her to comply with medical and psychological treatment to ensure her stable mental health. Emilio's case plan goal was for him to protect Alaina by never leaving her in Teresa's care, and to arrange for childcare during the time that he had to go to work. In addition, Emilio was required to participate in counseling to learn to better understand Teresa's mental illness and the harm that it could pose to Alaina. Each parent was granted visitation, and the social worker was given discretion to expand visits.

For the six-month hearing, the social worker reported that Teresa had participated in the provisions of her case plan and that in February, Teresa began having unsupervised visits with Alaina. Emilio had been attending weekly therapy. His therapist said that he

---

[2] The dispositional hearing had been delayed to allow the provision of notice under the Indian Child Welfare Act (25 U.S.C. § 1901).

was doing well, but that he denied that Teresa had been diagnosed with schizophrenia. Although Emilio had been granted unsupervised visitation with Alaina, he did not visit consistently and frequently cancelled visits, saying that he had another appointment, had car trouble, or providing some other reason. On May 20, 2013, the Agency reported that Teresa had recently been hospitalized because her mental health was deteriorating, and that although Emilio had been aware of her condition, he did not report it to the Agency and did not use the support system that had been set in place.

At the six-month hearing on June 6, 2013, the court ordered six more months of services and specified that Emilio would continue to have unsupervised visits.

On July 25, 2013, Emilio was detained by the United States Department of Immigration. Staff at the Metropolitan Correctional Center (MCC) in San Diego reported that it was expected that Emilio would be deported to Mexico. The social worker reported that Emilio had been participating in therapy before his incarceration, but that he did not consistently visit Alaina. The social worker attempted to contact a counselor at MCC to inquire about services available to Emilio, but was unsuccessful in reaching a counselor.

Emilio indicated that he wanted continued services and unsupervised visits if he were released from custody. He did not want Alaina to visit him while he was incarcerated, but asked for telephone visits. The court ordered the Agency to provide Emilio with a telephone calling card so that he could call Alaina from MCC.

At the 12-month hearing on October 10, 2013, the court received the Agency's 12-month report in evidence. The parties stipulated that if the social worker were to testify,

4

she would say that Emilio remained in custody and that his sentencing hearing was scheduled for December 2, 2013. After considering the evidence and arguments by counsel, the court found that Teresa had made substantive progress with the provisions of her case plan and ordered her services continued to the 18-month date. The court also found that reasonable services had been offered to Emilio, but that he had not made substantive progress with his case plan, and that it was not likely that Alaina could be returned to his care by the 18-month date. For these reasons, the court terminated Emilio's services.

## DISCUSSION

### I

Emilio contends that the court erred in finding that he was provided with reasonable reunification services. He argues that no evidence was presented to show that he was offered any services while he was incarcerated. He maintains that he had been progressing with his case plan until his incarceration, and that the Agency had not presented information to the court regarding the barriers to him accessing services while he was in custody.

Emilio has forfeited his argument that his services were inadequate during the time he was in custody by not bringing the matter to the attention of the juvenile court. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.) A "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] . . . [¶]

Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.)

After Emilio was arrested on July 25, 2013, he appeared in juvenile court, with counsel, on three separate occasions, but never argued that the services he was receiving while in custody were insufficient. If Emilio believed that his services were lacking, it was his obligation to bring his claim to the court's attention.[3]

Moreover, even if we were to consider this issue, Emilio has failed to demonstrate that the court's finding that he was provided with reasonable reunification services is not supported by substantial evidence.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.' [Citation.]" (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) In determining the sufficiency of reunification services, the role of the appellate court is to decide "whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) The standard is

---

3    Emilio appears to argue in his reply brief that he did not forfeit his argument because the juvenile court did not advise him that he could challenge the adequacy of his reunification services by writ. However, Emilio forfeited his claim regarding the reasonableness of his reunification services because he failed to bring the matter to the attention of the juvenile court, not because he did not seek writ review.

6

not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

Emilio was required to participate in counseling so that he could learn to better understand Teresa's mental illness and the risks that her illness posed to Alaina. The Agency helped him set up individual counseling, and he participated in counseling sessions from September 21, 2012, through July 24, 2013, until just before his incarceration. After the social worker was informed that Emilio was in custody, she contacted MCC on August 13, 2013, and learned that a hearing was scheduled for Emilio, and that he would be deported after the hearing. The social worker attempted to contact a counselor at MCC, but was not successful. We conclude that the services offered or provided were reasonable under the circumstances.

Emilio also was provided with reasonable visitation. He was encouraged to visit Alaina and for much of the dependency period was allowed unsupervised visits, yet he did not visit regularly and often cancelled visits. Emilio maintains that he was protecting Alaina by not visiting because he believed that it would be unsafe to drive her after he injured his arm. We find this contention unpersuasive. The record shows that Emilio's visits were inconsistent long before his injury, and that he cancelled visits for reasons such as that he was having car trouble, that he had to move his car, that he had to attend to paperwork, that he had another appointment, that he had to work, and for other reasons as well. After his incarceration, Emilio decided that he did not want Alaina brought to the jail to see him, and instead, asked for telephone visits. The court ordered the Agency

7

to provide him with a calling card. Emilio was given ample opportunity to visit Alaina, but failed to maintain consistent visits.

Emilio relies on *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996 and *In re Maria S.* (2000) 82 Cal.App.4th 1032 as support for his argument that there is not substantial evidence to support a finding that he was provided reasonable services. These cases are readily distinguishable from Alaina's case. In *Mark N.* the reviewing court held that an incarcerated father had not received reasonable reunification services because, even though he had written to the social worker four or five times during his incarceration, the social worker had made little effort to maintain contact with him and did not explore alternatives to help him meet the requirements of his case plan while he was in prison. (*Id.* at pp. 1012-1013.) In *Mark N.*, the father was incarcerated for all but one month of the dependency period. (*Id.* at p. 1003.) Emilio, by contrast, was not in custody during most of Alaina's dependency, he and the social worker had frequent communication, and he participated in individual therapy for several months. After Emilio was arrested, the social worker contacted MCC to speak with a counselor to inquire about what services were available to him, but was unsuccessful in making contact with the counselor. In addition, Emilio was offered visitation throughout the case even while he was in custody.

*In re Maria S*, *supra*, 82 Cal.App.4th 1032 is also distinguishable from the situation in the present case. In *Maria S.*, the reviewing court held that the evidence did not support the finding that a mother had received reasonable reunification services. She had given birth to her daughter while she was incarcerated, and it was expected that she

8

would be deported when she was released from custody. Her case plan anticipated that her services would begin while she was in prison, and that she would begin the reunification process after her release. However, there was no evidence that the mother was offered services while in prison, and she was deported before she could participate in any services. (*Id.* at pp 1034, 1040.) Emilio, on the other hand, was not in custody for most of the dependency period and he participated in services from October 2012 until he was taken into custody in July 2013. Neither *Mark N.* nor *Maria S.* supports Emilio's position. Emilio has not shown that he was not offered or provided reasonable reunification services.

## II

Emilio asserts that the court abused its discretion by terminating his services while continuing services for Teresa. He argues that the progress that he and Teresa had made in their case plans was similar, and notes that the social worker had initially recommended extending services for six more months for both parents, but changed her mind once he was incarcerated. He claims that there was no showing that continuing services for him would be detrimental to Alaina.

Under section 366.21, subdivision (g)(1), a court may continue a case to the 18-month date only if there is a substantial probability that the child will be returned to the parent's physical custody and safely maintained in the home by that time. In considering whether to extend the case to the 18-month date, the court must make all of the following three findings:

> "(A) That the parent or legal guardian has consistently and regularly contacted and visited with the child.

9

"(B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home.

"(C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs."

The court's decision whether to terminate services for one parent while extending services for the other parent is reviewed under the abuse of discretion standard. (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.)

Teresa was released from the hospital on July 7, 2013. At the time of the 12-month hearing on October 10 she was in biweekly therapy, compliant with her medication regime, meeting regularly with her psychiatrist and participating in in-home parenting classes. Her visits with Alaina were going well. Under these circumstances, the court was justified in extending services for Teresa for an additional six months under the requirements of section 366.21, subdivision (g)(1).

Emilio's situation was different. The requirements of section 366.21, subdivision (g), that would allow the court to extend services for him to the 18-month date were not present. Emilio did not show under section 366.21, subdivision (g)(1)(A), that he had consistently and regularly contacted and visited with Alaina. Rather, he frequently cancelled visits for various reasons, and he had not seen Alaina for one and one-half months prior to his incarceration. After he was in custody, he decided not to have Alaina visit him in jail, although visitation was offered.

Emilio also did not show under section 366.21, subdivision (g)(1)(C), that he had the capacity and ability to complete the objectives of his treatment plan and to provide for

10

Alaina's safety, protection, and physical and emotional well-being. The goal of Emilio's case plan was for him to be able to identify safety risks, including gaining a better understanding of Teresa's mental illness and the harm that it could pose to Alaina. In addition, Emilio was required to arrange adequate childcare for the times when he was working. Although Emilio had been participating in therapy sessions, he still had difficulty showing how he would keep Alaina safe. Further, he was still unable to recognize the serious risks that Teresa's mental illness posed for Alaina, and he did not report to the Agency when Teresa's condition deteriorated in May 2013, nor did he use the safety plan that had been put in place. At the time of the 12-month hearing, Emilio was in custody awaiting sentencing and deportation. The requirements of section 366.21, subdivision (g)(1), clearly were not met.

Although under these circumstances some courts might have ordered Emilio's services extended to the 18-month date, Emilio has not shown that the court abused its discretion by terminating his reunification services while continuing Teresa's services.

## DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:

McDONALD, Acting P. J.

IRION, J.

11