[No. B135717. Second Dist., Div. Four. Aug. 4, 2000.]

In re MARIA S., a Person coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent.
LILLIAN S., Defendant and Appellant.

**COUNSEL**

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Arezoo Pichvai, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, Acting P. J.**—A detained minor and incarcerated mother are entitled to reunification services absent a finding by clear and convincing evidence that such services would be detrimental to the minor. (Welf. & Inst. Code, § 361.5, subd. (e)(1).)[1] Here, mother gave birth to the minor while incarcerated and the juvenile court approved a case plan which called for reunification services beginning in state prison and contemplated to be continued after mother was released. Upon release, mother was deported and she was unable to complete the case plan. The juvenile court found by clear and convincing evidence that reunification services had been provided, but that mother had refused to comply with the case plan. It ordered termination of reunification services and ultimately terminated parental rights. We conclude the record does not support the findings and we reverse.

## STATEMENT OF FACTS

In October 1996, while incarcerated on a drug possession charge, appellant, Lillian S., gave birth to Maria S. (hereafter Maria). The Los Angeles County Department of Children and Family Services (DCFS) detained Maria and filed a petition pursuant to section 300, subdivisions (b) and (g).[2] The

---

[1] All further references will be to the Welfare and Institutions Code unless otherwise noted.

[2] Section 300, subdivision (b) provides that a child comes under the juvenile court's jurisdiction and may be adjudged a dependent child of the court if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the

petition alleged that appellant was incarcerated for sale and possession of a controlled substance and could not care for Maria S.[3]

The application for petition recommended a plan for reunification services, with which appellant agreed, as follows: "[I]t is respectfully recommended that [appellant] *(when released from prison)* participate in random drug testing to and participate in counseling to address child endangerment issues and learn how to keep her children safe at all times; that [appellant] be allowed to have monitored visits after at least 6 clean drug tests and consistent participation in counseling; that [appellant] not be allowed to visit the minor if under the influence of drugs and/or alcohol." (Italics added.)

On October 22, 1996, appellant was present at the detention hearing and counsel was appointed to represent her. The juvenile court ordered Maria detained as a minor described within subdivisions (b) and (g) of section 300. It ordered temporary care and custody of Maria be vested in DCFS, that Maria be placed in shelter care, and ordered DCFS to provide family reunification services.

A joint jurisdictional/disposition hearing was conducted on January 23, 1997. The report filed by DCFS indicated that appellant was incarcerated at Valley State Prison in Chowchilla, California. It recommended that the court order appellant to participate in a program of parenting classes, substance abuse counseling and random drug testing, as approved by DCFS. It suggested that counseling be with an approved program at Valley State Prison for women while appellant remained incarcerated and upon her release she would attend at Children's Institute International at 711 South New Hampshire Avenue, Los Angeles, California. The report also identified appellant's expected release date of November 10, 1997. However, the counselor at Valley State Prison advised DCFS that appellant was expected to be interviewed by the Immigration and Naturalization Service prior to her release and failure by appellant to provide sufficient documentation proving legal residency could result in appellant's deportation.

The initial case plan/case plan update, filed in connection with the jurisdictional hearing, advised the court that appellant wanted to obtain custody of Maria upon release from prison. It identified the problem to be addressed was appellant's incarceration for sale and possession of a controlled substance. Under "Objectives" and "Activities" listed for appellant to complete

---

child. . . ." Subdivision (g) provides jurisdiction over a child who "has been left without any provision for support" and "the child's parent has been incarcerated . . . and cannot arrange for the care of the child. . . ."

[3]Appellant has three other children, Gustavo S. (age 8), Gabriel S. (age 4), and Emilio S. (age 3), then residing in Mexico with their grandmother.

were the following: "Will participate and successfully complete a program of parenting classes, substance abuse counseling and random drug testing. [¶] Upon [appellant's] release from jail, she will establish and maintain a lifestyle free from any further criminal activity."

Appellant waived her attendance at the jurisdictional/dispositional hearing.[4] The court declared Maria a dependent of the court under subdivisions (b) and (g) of section 300. It ordered that appellant attend DCFS-approved drug rehabilitation with random drug testing and parent education classes.

The six-month review hearing was conducted on July 24, 1997. It was reported that appellant remained incarcerated but that upon her release she hoped to obtain custody of Maria and return to her native land of El Salvador. The report again noted that upon appellant's release the Immigration and Naturalization service may deport her. Under "Case Plan Objectives and Tasks," the report recommended that appellant complete three steps: first, that she be released from prison on the estimated date of November 10, 1997; second, that she attend parenting and drug diversion with an estimated completion date of January 24, 1998; and finally, that she provide a safe home for the minor. DCFS recommended that appellant "be ordered to participate in a DCFS-approved program of counseling. Counseling be with DCFS-approved agency, upon her release." The quarterly report from the Foster Family Agency, dated July 1, 1997, states: "Mother incarcerated unable to visit. No other family members visit. Mother does call weekly, and writes letters on an almost daily basis. At times she has written 2-3 [times] daily."

Appellant waived her appearance at the six-month review but was represented by counsel. Regarding the case plan, the minute order reflects two findings: (1) "the Court finds case plan is appropriate"; (2) "Court finds [appellant] has . . . not complied with the case plan." The court ordered DCFS "to provide to minor and parents or guardians: Family Reunification Services" and scheduled a section 366.21 hearing for January 22, 1998.

The report prepared for and received in connection with the January 22 hearing states that appellant was released from state prison on the date expected, November 10, 1997, and was immediately transported to San Francisco for a deportation hearing. On December 17, 1997, the caseworker learned that appellant had been deported to El Salvador, but that it was her desire to return for the January 22 hearing. Under the heading "Action taken/completed by DCFS" in relation to appellant, the report states: "Children's Social Worker has been in contact with [appellant] while in prison."

---

[4]Father, Edwin S., appeared at this hearing and was appointed counsel. He has remained a party to the proceedings throughout but has not appealed.

Under the heading "Case Plan Objectives and Tasks" it identifies two objectives for appellant: (1) "To attend next court date to determine if reunification with minor will be possible"; and (2) "Attend Counseling" with a target completion date of July 22, 1998.

Appellant did not attend the review hearing on January 22, 1998, although counsel appeared on her behalf. The court made a finding that the case plan had been appropriate and concluded: "The parents have not complied with the court orders and case plan, and reasonable services were provided. And there exists no possibility that the minor will be returned to the parents within six months." It ordered that Maria remain a dependent of the court and scheduled a section 366.22 hearing for April 21, 1998.

The report prepared for and received at the section 366.22 hearing advised that Maria's parents were in Guatemala and had not been in contact with DCFS since December of 1997. However, Manuel S., the brother of Edwin S., had appeared for the January 22, 1998 hearing and was interviewed by DCFS. Manuel S. told the caseworker: "[Appellant] wants me to get custody of Maria [] so that she will not be adopted by other people. [Appellant] or my brother [the father] can come later and take Maria . . . with them to Guatemala." The report recommended as follows: "Due to lack of interest shown by parents and family members, it is felt that Minor Maria . . . should remain in the care of [the] foster mother. Further, adoption proceedings should be considered at this time."

Appellant did not appear on April 21 at the section 366.22 hearing. Counsel representing appellant advised the court that she had not been in contact with appellant. Based on information within the judicial review hearing report, the court made the following finding: "The court finds by clear and convincing evidence that reasonable efforts were made to reunite the minor with the parents, and those efforts were unsuccessful. [¶] The court finds by clear and convincing evidence that reasonable services were offered and/or given to the parents." The court ordered termination of family reunification services, and set a permanency planning hearing pursuant to section 366.26.

On June 28, 1999, the caseworker received a collect telephone call from appellant relating to a section 366.26 hearing scheduled for July 8, 1999. Appellant begged the caseworker not to place Maria for adoption and inquired about attending the hearing. The caseworker told appellant that it was not a good idea for her to come to the hearing because "it was against the law to come to the USA without a visa and thus she could again be arrested and deported. CSW told [appellant] it was a better plan of action to

be in touch with her attorney of record, Pamela Tripp, and CSW gave [appellant] her attorney's address and phone number." At the hearing, the trial court advised the caseworker to contact appellant and tell her it was "a good idea to get proper documentation before coming to the United States." The court continued the matter for a contested hearing.

The permanency planning hearing was ultimately conducted on September 14, 1999. Appellant remained in Guatemala. The DCFS report stated that appellant had been in regular contact with the caseworker on almost a weekly basis and that she desired to attend the hearing and had been in contact with the United States Embassy in Guatemala to obtain a visa. On August 18, 1998, appellant told the caseworker that she expected to be in attendance. Appellant's counsel advised the court: "Your Honor, I have had regular contact with my client who was deported to Guatemala. She has made many efforts to get back into this county unsuccessfully. She's opposing the adoption and is asking that D.C.F.S. have discretion to allow her to write some letters to her daughter. [¶] Other than that, she objects." The court found that it would be detrimental to Maria to be returned to appellant and found by clear and convincing evidence that it was likely Maria would be adopted. The court entered an order terminating appellant's parental rights.

## DISCUSSION

While appellant raises a number of issues on appeal, the only one we need to address relates to the court's findings regarding reunification services.

As a preliminary matter, we note, and respondent concedes, that the court failed to advise appellant of her right to writ review to challenge termination of reunification services and setting of the section 366.26 hearing. As such, "appellant's claims of error [relating to reunification services] are cognizable on appeal. . . ." (*In re Rashad B.* (1999) 76 Cal.App.4th 442, 450 [90 Cal.Rptr.2d 462].)

Turning to the issue of reunification, section 361.5, as pertinent, provides:

"(a) Except as provided in subdivision (b) of this section[5] . . . , whenever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father. . . . Child welfare services, when provided, shall be provided as follows: [¶] . . . [¶]

"(2) For a child who, on the date of initial removal from the physical custody of his or her parent . . . , was under the age of three years,

---

[5]Not applicable here.

court-ordered services shall not exceed a period of six months from the date the child entered foster care. [¶] . . . [¶]

"(e)(1) If the parent or guardian is incarcerated or institutionalized, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. . . . [¶] . . . [¶]

"An incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as part of the service plan if these programs are available." (§ 361.5.)

It is important to note at the outset that the court was not requested to and did not make a finding pursuant to section 361.5, subdivision (e)(1) that it would be in the best interest of Maria that reunification services not be provided. Rather, DCFS recommended and the court adopted a plan for reunification.

■ Dependency law requires a " 'good faith effort' " to provide reasonable reunification services "responding to the unique needs of each family." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306 [36 Cal.Rptr.2d 910].) "Courts may not initiate proceedings to terminate parental rights unless they find adequate reunification services were provided to the parents, even when the parents are incarcerated. [Citation.] 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success.' [Citation.]" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164-1165 [39 Cal.Rptr.2d 743].)

A trial court's finding regarding reasonable reunification services can only be made when there is clear and convincing evidence that such services have been offered, and the standard of clear and convincing evidence requires that the " 'evidence must be so clear as to leave no substantial doubt. . . .' [Citation.]" (*In re Monica C., supra,* 31 Cal.App.4th at p. 306.) On appeal, the standard of review is the substantial evidence. test. Therefore, "[a]ll reasonable inferences must be drawn in support of the findings and the record must be viewed in the light most favorable to the juvenile court's order. [Citation.]" (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58 [156 Cal.Rptr. 262].)

■ The record here reflects that the court made findings by clear and convincing evidence that the case plan was appropriate, that reasonable services had been provided, and that appellant had failed to comply with

court orders and the case plan. However, the record contains no evidence whatsoever to support these findings.

First, and most obvious, the case plan was flawed from the outset. The original plan for reunification services, agreed to by appellant, was that upon appellant's release from state prison she would begin the reunification process. The initial case plan noted that because of appellant's incarceration many of the services contemplated would have to await her release. The six-month review report identified two goals for appellant upon her release from prison: that she attend parenting and drug diversion programs to be completed by January 24, 1998, and that she then establish a safe home for Maria. The evidence was undisputed from the beginning that the Immigration and Naturalization Service was contemplating deporting appellant upon her release from prison, a situation that would preclude appellant from complying with the case plan.

Second, while DCFS recommended that appellant receive counseling while incarcerated, the record is devoid of any evidence to suggest what services, if any, were identified as available or offered to appellant during her incarceration. The record is also devoid of any evidence to suggest that appellant refused or failed to cooperate in any way with the case plan while she remained incarcerated.

Finally, appellant was deported before she could avail herself of the services recommended by DCFS which were to be provided upon her release. In other words, there is no evidence in the record that appellant was afforded any reasonable opportunity to complete the contemplated case plan and reunify with Maria.

For the foregoing reasons, the findings of the juvenile court regarding reunification services are not supported.

DISPOSITION

The ultimate outcome of this case, termination of parental rights, was preordained when DCFS and the trial court placed the matter on automatic pilot without selecting an appropriate flight plan. We are not unaware of the fact that Maria has thrived and bonded with her foster mother, who wishes to adopt the minor. However, termination of parental rights is a significant event in the lives of the parties involved and the Legislature has provided specific statutory steps to be followed before termination is appropriate. The record does not support the findings made by the trial court relating to the path selected in this instance.

The order terminating parental rights is reversed and the matter is remanded to the juvenile court.

Curry, J., and Rubin (L.), J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.