Filed 11/20/13  R.S. v. Super. Ct. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.S., | |
| Petitioner, | E059369 |
| v. | (Super.Ct.No. J246484) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cheryl C. Kersey, Judge.  Petition denied.

Friedman, Gebbie, Cazares & Gilleece, Monica Cazares for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel and Jamila Bayati, Deputy County Counsel, for Real Party in Interest.

1

Petitioner R.S. (father) is the father of eight-year-old A.S., who was removed from her mother's care and placed, along with her half-siblings, with maternal relatives. Father resides in Wisconsin. Although he initially stated he would cooperate fully and wanted custody of A.S., he never completed any family reunification services and told the social worker that he did not want services and did not want to disrupt A.S.'s placement. At the same time, father did not want to give up his parental rights. Father now challenges the juvenile court's order dated July 29, 2013, terminating his reunification services and setting a hearing under Welfare and Institutions Code, section 366.26, at which it will consider terminating his parental rights.[1] Father argues the juvenile court abused its discretion when it found that he was provided with reasonable services and that he failed to participate regularly and make substantive progress in the court-ordered treatment plan. As discussed below, we agree with the juvenile court that father deliberately chose not to participate in the reunification services offered to him, and so deny the petition.

## FACTS AND PROCEDURE

*Detention and Jurisdiction/Disposition – October 2012 to February 2013*

A.S. was seven years old when she and two younger half siblings were removed from their mother in October 2012. An investigation by San Bernardino County Children and Family Services (CFS) showed the mother had choked A.S.'s five-year-old half

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

sibling, the home lacked sufficient food, and mother abused methamphetamines.  Mother gave birth to a fourth child the following month.

Father resided in Wisconsin, was married, and had recently begun providing care for his 14-year-old daughter.  He had a history of criminal conduct and substance abuse, and was in prison from 2004 to 2008.  A.S. was born in 2005.  Father had last seen A.S. in 2011.  Father told the social worker that he had not used drugs since 2004, and that he had worked hard to start a new life, including moving to Wisconsin.  Father also stated that, prior to A.S.'s removal from her mother, he had been working to establish a relationship with her.

CFS filed a section 300 petition regarding A.S., alleging that mother's substance abuse and abuse of A.S.'s half sibling placed A.S. at risk.  The petition also alleged that father had failed to protect A.S. from her mother, and that he had a history of criminal conduct and substance abuse. On October 22, 2012, a social worker spoke with father by telephone to obtain information on potential American Indian ancestry.  On November 1, Father was personally served with a copy of the petition and notice of the November 15, 2012 jurisdiction and disposition hearing.  The address listed was his correct address and included his apartment number.  In the jurisdiction and disposition report filed on November 14, 2012, the social worker evaluated father's suitability for parenting A.S. as follows: "The prognosis for reunification of [A.S.] with the father . . . seems promising at this time.  [Father] has been in contact with the Department and has expressed his willingness and ability to protect and provide care for his daughter [A.S.].  [Father] plans on being available by phone at the upcoming Jurisdiction/Disposition Hearing and has

3

stated he will cooperate with CFS and the Court in any way to ensure the safety of his daughter. CFS will continue to assess [father's] background, his home, and his willingness and ability to parent [A.S.].

Jurisdiction and disposition hearings set for November 15 and December 5, 2012, were continued. Father was represented by appointed counsel starting with the December 5 hearing. Counsel asked CFS to "look into placement with father" and asked for father's address so she could "notice him." On December 26, 2012, father's counsel set the matter contested. Counsel stated she had spoken with father and "There is some modifications to allegations in the case plan that we are seeking."[2]

The contested jurisdiction and disposition hearing was held on February 5, 2013. The juvenile court amended the allegation regarding father to read, "The father . . . has a criminal history of substance abuse, which may place the child [A.S.] at risk of abuse and neglect." The court found that allegation true as to father, but dismissed allegations that father knew or should have known that A.S. was at risk of abuse or neglect and that father has a substance abuse history that puts A.S. at risk of abuse and neglect. The court found father to be the presumed father and ordered him to participate in family reunification services. The court authorized CFS to conduct an ICPC for placement of A.S. with father if mother could not reunify, but explicitly conditioned any placement with father on the court's approval.

---

[2] Father was not present for any of the proceedings in this case, but was represented by appointed counsel. It does not appear from the record that he was present by telephone.

4

*Six-Month Review Hearing*

The six-month review hearing was set for July 8, 2013. In the report prepared for that hearing, the social worker recommended terminating reunification services to both father and mother. Father apparently had not participated in any reunification services. Attached to the report are copies of four form letters,[3] entitled "Progress Letter to Parent" sent to father on March 7, April 17, May 29 and June 20, 2013. Each letter lists the components of the reunification plan and asks father to call the social worker to arrange for services. Each letter was sent to the correct address in Wisconsin, but did not include the apartment number. The social worker reported that she contacted father by telephone in early July "when it was learned he has been ill the last 6 months." Father stated that he was doing much better and had been cleared to return to work. Father told the social worker that he did not want to participate in family reunification services. He was fine with having A.S. raised by maternal relatives and would only step in if they could not care for A.S. Father stated he did not want to upset A.S.'s life by pulling her away from her family.

---

[3] The form letters contained the following information: "You have been ordered by Juvenile Court to regularly participate in the Reunification Service Plan so that your child(ren) [A.S.], can be returned to your home. As your social worker, I am concerned that you have not shown sufficient progress in starting or completing the following parts of your service plan: counseling, as needed[;] random drug testing[;] visitation . . . [¶] Please call me to discuss what problems may be preventing you from working on your Reunification Plan. I would like to help you to resolve these problems so that your child[ren] can be safely returned to your home."

Father's counsel set the matter contested on his behalf and asked that he be served with a copy of the review report, though she commented that it appeared he was in agreement with the CFS recommendations.

The contested six-month review hearing was held on July 29, 2013. The social worker testified that she had sent father four letters to notify him that he needed to complete "counseling as needed, random testing, and visits with [A.S.]." The social worker also testified that she first spoke with father by telephone on July 4, 2013, which is when she first discovered that father lived in an apartment complex. The address the social worker had for father, and to which she had sent the four letters, did not include an apartment number. Father told the social worker that he had never received any of the four letters. Father also told the social worker that he was not interested in receiving family reunification services unless his parental rights were going to be terminated. Father was comfortable with A.S.'s placement with maternal relatives and wanted to keep her with her siblings. When father's counsel asked the social worker what referrals for services had she provided to father, the social worker replied that she had not asked father to drug test or given him any referrals for counseling. Father was not in agreement with the CFS recommendation that his parental rights be terminated.

After hearing argument from the parties the juvenile court found that reasonable services had been provided and terminated family reunification services to both parents. Regarding father, the court reasoned that CFS could not force father to engage in services if he did not want to, and that father had stated he did not want to participate in services. Father initiated this writ proceeding on August 12, 2013.

6

1. *Reasonable Services*

Father argues the juvenile court abused its discretion when it determined CFS provided him with reasonable services. This is because, father argues, CFS failed to notify him of his case plan components or provide any referrals or direction as to counseling, drug testing or visitation.

Before initiating proceedings to terminate parental rights, the juvenile court must find by clear and convincing evidence that CFS provided reasonable reunification services. (*In re Maria S.* (2000) 82 Cal.App.4th 1032, 1039, quoting *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164-1165.)

We review a juvenile court's finding that an agency offered or provided reasonable reunification services for substantial evidence. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598 (*Katie V.*).) "In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 (*Misako*).)

Here, CFS sent four letters to father in four months informing him of the services required by his case plan and asking him to contact the social worker so she could help him obtain those services. Although these letters were addressed to father without an apartment number, and father told the social worker that he did not receive any of them,

substantial evidence supports the juvenile court's conclusion that father did receive at least one of the letters but simply failed to follow through with reunification services. First, the court could easily infer that not one of the four letters was returned to sender as undeliverable because the social worker continued to send them to the same address and did not state during her testimony that any of them were returned. Second, the letters were sent to the correct address, and the fact that father lived in apartment number 3 indicates it was likely a small building and thus unlikely that four separate letters would remain undelivered, and not returned to sender, when delivered to that building and otherwise correctly addressed to father. Finally, the juvenile court, as the trier of fact, was entitled under the circumstances to discredit father's statement to the social worker that he had not received any of the four letters.

Regarding the social worker's failure to provide any referrals for services, each of the four letters asked father to contact the social worker so she could do just that. In addition, any attempt by the social worker to provide referrals during her telephone conversation with father on July 4, 2013 would have been useless after father told her he would not participate in services. As the juvenile court reasoned when it made the challenged ruling on July 29, 2013, CFS could not force father to engage in services when father stated that he did not want to.

2. *Participation and Progress in Case Plan*

Father further argues the juvenile court abused its discretion when it determined that he failed to participate regularly and make substantive progress in his case plan components, namely random drug testing, counseling as needed, and visitation.

8

The failure of a parent to participate regularly in court-ordered treatment programs is prima facie evidence that the child's return to that parent would be detrimental. (§§ 366.21, subds. (e) & (f), 366.22, subd. (e).)

We review dependency determinations for substantial evidence (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329), viewing the evidence in a light most favorable to the juvenile court's findings (*Misako R., supra,* 2 Cal.App.4th at pp. 538, 545). Where there is any substantial evidence to support the juvenile court's order, contradicted or not, we must affirm the court's decision. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.)

We find substantial evidence supports the juvenile court's conclusion that father did not make substantive progress in his case plan. First, although father argues he was only supposed to drug test and participate in counseling when directed by the social worker, the record indicates the social worker sent him four separate letters reminding him that he had not participated in his case plan at all and asking him to contact her so she could assist him in accessing services. Father did not do so, and later told the social worker that he would not participate in services. Regarding the visitation component of the case plan, the record indicates that father had telephone contact with A.S., but did not progress to visits, although he was authorized to visit with A.S.

The record as described above contains substantial evidence to support the juvenile court's conclusion that CFS attempted to provide father with reasonable services, but that father deliberately chose not to participate in the case plan.

**DISPOSITION**

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                                                P. J.

We concur:

RICHLI_____
                    J.

CODRINGTON_____
                    J.