Filed 12/18/14  In re L.S. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re L.S. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>     v.<br><br>LEANN S.,<br><br>    Defendant and Appellant. | G050182<br><br>(Super. Ct. Nos. DP022736, DP022737)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Dennis J. Keough, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

\*        \*        \*

Leann S. (the mother) appeals from the juvenile court's decision to terminate reunification services following the 18-month review. The court ordered two of her children, L.S. and S.S., into long-term foster care pursuant to Welfare and Institutions Code section 366.26.[1] The mother argues the reunification services provided were unreasonable. We conclude the trial court's finding that reasonable reunification services were provided is supported by substantial evidence, and therefore affirm.

I

FACTS

This is the second time this court has reviewed this matter. In *Leann S. v. Superior Court* (Aug. 20, 2014, G050193) [nonpub. opn.], we denied the mother's writ regarding another child, M.S., after the court terminated services following the 18-month review hearing.[2] We stated, "Under the circumstances we find in this record, we conclude substantial evidence supports the juvenile courts finding the mother was provided or offered reasonable circumstances. We find no error." (*Ibid.*) The mother now appeals on the same grounds with respect to L.S. and S.S.

Because of the limited issues on appeal, we recite only the relevant facts as succinctly as possible. In July 2012, the mother was arrested for emotionally abusing then 13-year-old L.S. Both of the mother's other children were detained by the Orange

---

[1] Subsequent statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Respondent argues we should take judicial notice of the prior opinion, while the mother argues we should not consider anything in the prior opinion for the truth of the matter asserted. Pursuant to the ordinary rules governing judicial notice of court records (Evid. Code, § 459, subd. (a)), the request is granted. (See *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.)

2

County Social Services Agency (SSA) and then released into the custody of their father, Douglas S.[3]  A temporary restraining order was issued to keep the mother away.

In September, the court sustained an amended petition under section 300, subdivisions (b) and (c).  Among other things, the petition alleged the mother was arrested for violating Penal Code section 273a, subdivision (a) by subjecting L.S. to ongoing emotional abuse, including using extremely derogatory language.  The mother was also "concerned" L.S. suffered from multiple medical and mental health disorders, including signs of lupus and Asperger's syndrome, although none of these had been diagnosed by a mental professional.  L.S. claims he is convinced he had these disorders because the mother repeatedly told him he was showing symptoms.  Domestic violence between Douglas S. and the mother, with the mother as perpetrator, was also alleged, leading to dozens of occasions on which the police had responded to the home while they were together.  The petition also stated the mother had an extensive history of mental illness, including bipolar disorder, depression, and other issues.

The court declared the children dependents and ordered services.  The mother's case plan included learning to express anger appropriately, refraining from abusive and threatening behavior, demonstrating she accepted responsibility, completing a psychiatric/psychological evaluation, participating in a treatment program, domestic violence counseling, and a parenting class.

By the six-month review, the mother had made moderate progress, completing several required programs and beginning counseling.  Her provider reported "slow process."  She began a neuropsychologic evaluation.  Her therapist reported she met the criteria for posttraumatic stress disorder (PTSD) and major depressive disorder.  The therapist characterized the mother as "less scattered, more organized."  The mother's longtime physician reported she suffered from multiple medical problems including

---

[3] Douglas S. is not a party here, and M.S. is not a subject of this appeal.  Accordingly, they will be mentioned only as relevant.

lupus, Sjogren's syndrome, insulin resistance, symptomatic menopause, and IgG deficiency. She began medication for PTSD, which resulted in improvement, but may have caused side effects that impacted mental processing and judgment.

The social worker reported the mother continued to present erratically and was sometimes verbally aggressive with her and the children. Sometimes the mother would communicate coherently, at other times she was erratic, characterizing herself as a victim abused by Douglas S. and L.S. In May 2013, she indicated she was transient. The social worker referred her for an Evidence Code section 730 evaluation (the 730 evaluation).

At the six-month review in June 2013, as to L.S. and S.S., all parties stipulated reasonable services had been provided and returning the children to the parents would create a substantial risk of detriment. The court found the mother's progress had been moderate and ordered services to continue.

In August 2013, Dr. Michael Tramell completed the 730 evaluation. He reported the mother appeared to meet the criteria for "Borderline Personality Disorder, Mood Disorder Not Otherwise Specified, and [PTSD]. The possibility that this mother suffers from a primary psychotic disorder cannot be ruled out at this time, but does not appear likely." Tramell noted a number of pertinent risks for future abuse or neglect, and stated she had an "apparent lack of significant improvement." Further, her transient situation made placement with the children unrealistic. Tramell was also concerned about the mother's preoccupation with the children being ill in the absence of medical evidence, placing them at risk of undergoing unnecessary testing. Tramell suggested a number of treatment options, including more specialized psychotherapy, dialectical behavioral therapy (DBT) to address the symptoms of borderline personality disorder, and trauma-focused cognitive behavioral therapy to address PTSD. He also suggested a trial of a certain drug might be warranted to suppress some of the mother's symptoms, but acknowledged such a decision was complicated by her medical conditions.

4

The mother rejected the evaluation and told the social worker she would be obtaining a lawyer to sue Tramell. She provided a letter from her medical provider which stated the provider disagreed with the borderline personality disorder diagnosis, and a letter from another doctor stating she could not take the drug Tramell suggested due to her medical condition. The same doctor provided her with information on DBT and a referral phone number. In a meeting in September, the mother stated she was not schizophrenic or bipolar, nor did she have borderline personality disorder. She again stated she would sue Tramell.

For the 12-month review, the social worker deemed the mother's compliance "minimal" but nonetheless recommended that services be continued. The mother had stopped participating in individual counseling with an individual planning program (IPP) provider.[4] The provider stated she had made some progress but needed to make more. She was participating in therapy with a psychologist intern instead. The intern stated her diagnosis was PTSD.

The social worker reported poor behavior by the mother towards staff and intimidating and inappropriate behavior toward the children. She continued to blame Douglas S. and L.S. for dependency. She also remained unemployed and transient. L.S. did not want contact with the mother until she had changed. Toward the end of the reporting period, the social worker reported a further downturn in the mother's behavior, both with the social worker and during visits.

At the hearing, all parties once again stipulated reasonable services had been provided. The court ordered continued services and set an 18-month review hearing. The mother's case plan remained similar, adding the requirement to participate

---

[4] The mother told the social worker she felt the provider had a "conflict of interest" because Douglas S.'s therapist was in the same office. She felt Douglas S. and the two therapists were conspiring against her.

in therapy with a licensed therapist approved by the social worker and to comply with any treatment plan the therapist ordered.

By the 18-month review, the social worker again deemed the mother's compliance minimal. Her behavior toward social workers and the children continued to be unacceptably intimidating and disrespectful. She discussed court-related matters, did not parent the children appropriately, at times became emotional. The mother refused to discuss her behavior during visits when the social worker attempted to raise the matter with her. She continued to blame Douglas S. and L.S.

The mother's behavior with the social worker continued to be erratic. She had been arrested for felonies in December 2013 and February 2014, including grand theft auto. She remained unemployed and transient, though for some time she moved in with a man who provided drugs to her and abused her.

The social worker provided her with bus passes, housing resources, reviewed the case plan, and continued to assess matters. She attempted to give the mother a referral for therapy at a contracted agency, but the mother refused, stating she was fine going to her current therapist. The mother refused any services the social worker offered.

At the hearing in May 2014, the court heard testimony from the social worker, which was essentially consistent with the reports filed. With respect to Tramell's recommendations, the social worker testified that with respect to DBT therapy, the social worker did not offer a referral because SSA did not have a contracted provider. The social worker suggested the mother speak with her attorney about requesting funds, while acknowledging providing services was SSA's responsibility.

The mother testified she had, since the 12-month review, been going to counseling at University of California Irvine Medical Center and St. Joseph's Hospital. She received her psychotropic medication through a clinic in Anaheim. She stated the social worker did not review the case plan with her and did not state it required

6

counseling. The mother had never declined any referrals. With respect to DBT, the mother stated she had learned it was very specialized and few providers offered it. She said she had asked the social worker for other services. She felt she had completed her case plan. She also testified she had a home that was ready for the children, but had not told the social worker because she was keeping it confidential.

At the conclusion of the hearing, the court found that returning the children would create a substantial risk of detriment, that the mother's progress was minimal, and that reasonable services had been provided. Reunification services were terminated, and L.S. and S.S. were ordered into long-term foster care. The mother now appeals.

II

DISCUSSION

During the initial stages of dependency proceedings, family preservation, which necessarily includes family reunification services, is the primary focus. (§§ 319, subd. (b), 361.5, subd. (a); *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787.) "Dependency law requires a '"good faith effort"' to provide reasonable reunification services 'responding to the unique needs of each family.' [Citation.]" (*In re Maria S.* (2000) 82 Cal.App.4th 1032, 1039.) "The adequacy of reunification plans and the reasonableness of the SSA's efforts are judged according to the circumstances of each case. [Citation.]" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.)

The juvenile court's finding that reunification services were sufficient must be based on clear and convincing evidence until the 18-month review, when the standard of preponderance of the evidence is used. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 595.) When that finding is challenged on appeal, we review it for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) We therefore view the evidence in the light most favorable to SSA and draw all reasonable inferences to uphold the court's order. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010.) The appellant bears the burden to show the evidence is

7

insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

The mother argues SSA did not provide a timely psychiatric evaluation. But any issue as to the evaluation's timeliness has been waived due to the mother's stipulation at the 6- and 12-month review hearings that she had received reasonable services. The 730 evaluation was filed on August 5, 2013, and the 12-month review was held in October. Therefore, any timeliness issue is waived.

The mother next claims SSA did not make reasonable efforts to implement Tramell's recommendations in the 730 evaluation. She focuses specifically on the DBT therapy. SSA argues this issue, too, is waived, and we must agree. The mother and counsel knew as of the date of the 730 evaluation was filed that DBT was recommended. Neither raised the issue with the court at the 12-month hearing two months later, when it was stipulated reasonable services had been provided, nor was it raised at any time before the 18-month review. Such alleged deficiencies are not intended to be used as a "gotcha" to prevent the termination of services at the 11th hour; the parent must bring such issues to the court's attention. (See *In re Christina L.* (1992) 3 Cal.App.4th 404, 416.)

Even if not waived, the mother puts far too much emphasis on the recommendations in Tramell's report, especially considering her contemporaneous dismissal of it and threats to sue him over its contents. DBT was suggested to address the mother's borderline personality disorder, a condition which she denied having.

Further, there is no showing, and no reason to believe, that even if every one of Tramell's recommendations had been followed, all of the issues leading to dependency would have been addressed by the 18-month review. DBT was a 12-month program, and she could not possibly have completed it by the time of the continued 18-month review hearing in May 2014, even if she had started the day after Tramell's report was filed in August 2013. And even so, the report did not present DBT or any other form of recommended treatment as a panacea. Tramell was rather pessimistic in his prognosis,

pointing out a number of ongoing issues, including the mother's lack of willingness to participate with her service plan and the social worker.

The evidence showed the main problem was not a lack of a particular form of therapy, but the mother's persistent rejection of participating in a structured plan as directed by SSA. This was demonstrated by the mother's refusal of referrals to SSA providers, for example, and her decision to seek therapy with an unlicensed intern instead. While the mother denied turning down referrals in her testimony, the court obviously found the social worker more credible on this point.

The court found that despite "her participation in the services that she has found to be acceptable, there has been no demonstrable evidence that [the] mother had made in — in addressing the issues that brought this matter before the court." Indeed, the court found that the situation had become more complicated in terms of her relationship with the children. The court found the mother specifically lacking credibility in a number of areas, including her housing situation. The court also found it unlikely that the mother would have been willing to participate in DBT, given her refusal to acknowledge the underlying condition.

The mother has not demonstrated a lack of adequate services. The standard is not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The lack of one form of recommended therapy alone does not render the entire service plan unreasonable. Here, SSA provided reasonable services, but the mother decided to go her own way in significant measure, and refused to take advantage of them, instead continuing to blame the fact of dependency on others, including her child. Substantial evidence, therefore, supports the court's finding.

9

III

DISPOSITION

The order is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.