Filed 2/22/21  In re A.A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.A.,<br><br>Defendant and Appellant. | F081448<br><br>(Super. Ct. No. JVDP-19-000335)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy GiacopuzziRotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Franson, J. and De Santos, J.

S.A. (mother) contests the July 1, 2020, order, finding that the Stanislaus County Community Services Agency (agency) provided her reasonable services prior to the juvenile court's termination of those services and the setting of a Welfare and Institutions Code section 366.26[1] hearing. Mother contends this issue is properly before this court notwithstanding that no petition for extraordinary writ was taken from that order. We find no prejudicial error and affirm

## STATEMENT OF THE FACTS AND CASE

Mother, age 28, has two children, A.A., now three-years-old, and B.A., now two-years-old.[2] The father of the minors is unknown.

On December 16, 2019, the agency received a referral that mother had been placed on an involuntary section 5150 hold and the minors had been placed with an uncle, an inappropriate caretaker. Mother had called law enforcement the previous evening, paranoid that people were following her. She was homeless and staying temporarily at a motel. Maternal grandmother, who lives in Alaska, reported that mother had been diagnosed with mental illness at age 20 and was not currently taking her medication. Maternal grandmother did not think mother was able to care for her children and that mother had little family support due to her emotionally and physically abusive behavior toward her family.

Mother, when interviewed at the behavioral services center, stated she was there for mental health treatment and was taking Zoloft and two other medications, although she had not been given a diagnosis. Mother refused to give the social worker the address of the uncle caring for the minors, stating they could stay there with uncle and his "wife." Mother did not have a plan for herself upon discharge and refused any services.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Although mother asserts that this appeal concerns both children, she only filed a notice of appeal as to A.A.

The minors were subsequently located and placed into protective custody. The uncle's "wife" had an outstanding felony no-bail warrant for domestic violence and was arrested.

*Petition*

A section 300 petition was filed alleging mother placed the minors at risk of harm by placing them with an inappropriate caretaker. The petition also alleged prior referrals for physical abuse, emotional abuse, and general neglect of the minors. The petition further alleged that father was unknown, and that mother was unable to provide care or support for the minors due to her involuntary hospitalization.

*Detention*

Mother did not appear at the detention hearing held December 19, 2019, although it was reported that she had been released from the hospital. No attorney was appointed for her at that time. Jurisdiction and disposition were set for January 28, 2020.

On December 27, 2019, mother spoke to a social worker and requested counsel. A motion for appointment of counsel was filed, to be heard January 7, 2020. But mother failed to appear on January 7, 2020, and the motion was dropped.

*Jurisdiction/Disposition*

The report prepared for jurisdiction and disposition reported that mother, who spoke to the social worker on December 27, 2019, was homeless and could not provide a mailing address. She was temporarily staying at a respite center for a few more days, and after that planned to stay with "family or friends."

When mother had come to the agency to speak to the social worker, she was upset and wanted to know where her children were. While she had previously been told that she could set up visits with the minors through the visitation center, she appeared forgetful and the information needed to be repeated multiple times. Mother reported that she had been referred to Telecare and completed a mental health assessment and was scheduled for a medication assessment that day. The social worker stressed the

importance of engaging in services and taking her medication, and mother agreed. Parenting and counseling services were also discussed. While mother agreed to engage in services, she did not express wanting to reunify with her children. At the time of the report, this was the only visit mother had with the social worker as she failed to communicate or engage further with the agency staff. She did not make herself available to be provided with referrals, reports, or to sign a release of information for Telecare.

The report recommended that mother receive reunification services to include mental health services, including an assessment and/or a psychotropic medication assessment, and to follow the recommendation of the provider. The case plan specifically stated that mother needed to sign a release form from her treating physician and Telecare to confirm her mental health diagnosis and treatment. The report also recommended individual counseling, parenting education, and substance abuse testing if deemed necessary. Once a week visits were recommended.

At a visit that occurred on January 14, 2020, mother was described as speaking in a low monotone and engaging with the minors for only a part of the visit. She was "antsy" to leave the visit at times and there were long periods of silence.

At the scheduled jurisdiction/disposition hearing on January 28, 2020, an attorney reported that he had spoken to mother prior to the hearing and that she wanted an attorney appointed. But when he set an appointment for her for the following day, she left the courthouse prior to the hearing. The juvenile court appointed the attorney "provisionally" to represent mother. The juvenile court noted that the mailing address mother was using was that of her attorney. A continuance was granted to January 31, 2020, to allow counsel to meet with mother.

At the January 31, 2020 hearing date, mother again failed to appear. While mother had missed her appointment with her attorney, she had left a message that she wanted to talk to him. The attorney was officially appointed to represent mother. County counsel asked mother's attorney to update any address and telephone number he had for

4.

mother into the court file. While the attorney had mother's telephone number, as she had called him, he stated that he did not have any updated address information.

The juvenile court sustained the petition and declared the minors' dependents, removed them from mother's custody and granted reunification services to mother. A six-month review was set for June 24, 2020.

An updated case plan was submitted on February 5, 2020, which included the previously recommended services, and added a provision that mother communicate with a public health nurse to learn proper diet and nutrition for the minors, as one of the children was grossly overweight and appeared to have a food obsession.

*Six-Month Review*

The notice of hearing for the six-month review was served on mother by first class mail at her address on file, which was her attorney's address.

The report prepared for the six-month review stated that mother was staying at "the Salvation Army Shelter at 9th Street in Modesto." She had been difficult to engage with and was not open to sharing information with the social worker. Mother had missed seven visits since January 14, 2020. And her participation in both visits and services worsened with COVID-19 restrictions. When the social worker was able to contact mother via telephone on May 13, 2020, mother stated she did not want services via telephone and did not see the point of parenting classes as they were not helpful.

At the Salvation Army, mother had been told that she needed to quarantine, but she left to stay in her car instead. During this two-week period, she missed her visits and the social worker was not able to locate her or communicate with her. When the social worker last spoke to her on May 18, 2020, she asked mother to drug test. Mother became angry and refused to do so. Before hanging up, mother stated that the social worker should not contact her again until she was able to provide her with in-person visits with her children. Mother had still not provided a waiver for exchange of information with Telecare.

Mother attended one of three meetings with the public health nurse. She attended three parenting classes and refused to participate after March 12, 2020. Mother had not begun counseling services, having only completed her second intake appointment as of June 4, 2020. Mother refused to drug test.

During visits that did take place, mother struggled to interact with the children. Prior to the pandemic, when visits were in person, mother often cancelled or attempted to end visits early. When visits were changed to virtual visits, mother participated in only two of nine scheduled visits. In one attempted virtual visit in May of 2020, mother was incoherent when contacted and then refused to participate; in another, she told the visitation staff she was sleeping and declined to participate.

After the social worker noted that mother consistently refused to engage with the social worker or in services through video, the report recommended that services be terminated, and a section 366.26 hearing be set.

Mother did not appear at the scheduled six-month review hearing June 24, 2020, and the hearing was trailed to July 1, 2020, to allow mother's counsel to contact her.

Mother again did not appear on July 1, 2020. At that time, mother's attorney indicated that he was satisfied that notice was appropriately sent to mother. The attorney confirmed that mother was living at the Salvation Army and that "they" had communicated to her about the hearing.[3] The juvenile court found reasonable services had been provided mother, her progress was minimal, and it then terminated mother's reunification services and a section 366.26 hearing was set for October 27, 2020. The juvenile court stated that, since there was no parent present, it was up to the attorneys to let their "clients … know what the appellate rights are." When mother's attorney reiterated that "the fundamental problem with this case is I have no contact with my

---

**3**      In context, the "they" the attorney references appears to be the agency.

client, so just so everybody is aware of that," the juvenile court indicated that it was mother's responsibility to contact counsel.

On July 1, 2020, the juvenile court mailed the minute order, notice to parties, a blank notice of intent to file writ petition and a blank petition for extraordinary writ form to mother in care of counsel at counsel's address.

No notice of intent to file writ petition was filed in either minor's case. On July 29, 2020, counsel filed a notice of appeal in A.A.'s case, signed by counsel. It purported to appeal from the findings and orders of July 1, 2020, which it described as a ".26 hrg." On page two of the notice of appeal, counsel checked box 7c, which indicated it was from an order after a 366.26 hearing, termination of parental rights. On box six of the form, counsel listed only A.A., not B.A.

**DISCUSSION**

Mother argues that the juvenile court failed to properly advise her of her writ rights after terminating her reunification services and setting the section 366.26 hearing, noting that the report prepared for the six-month hearing specifically stated that she was living at the Salvation Army at 320 9th Street in Modesto and notice was sent to her attorney's address instead. If mother was not adequately advised of her writ rights, she would be free to assert error regarding the termination of her family reunification services at the six-month review hearing in July 2020; if she was adequately advised, she would have forfeited such arguments by failing to seek writ review. (See § 366.26, subd. (*l*)(1)&(2); *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 ["The juvenile court did not duly advise father of his writ rights, with the result he is entitled to challenge the merits of the setting order on appeal from the termination order."]; *In re Maria S.* (2000) 82 Cal.App.4th 1032, 1038 [claims of error regarding reunification services cognizable on appeal from order terminating parental rights because court failed to advise mother of her writ rights].)

7.

In the interest of judicial economy, we decline to consider the parties' arguments regarding whether mother received adequate notice of her writ rights,**4** or whether the issue would have been forfeited even if she had timely sought writ review.  (See *In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 ["A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court."]  We instead consider on the merits mother's claim that she was not provided with reasonable reunification services.  We find no error in the juvenile court's determination that the agency offered mother reasonable family reunification services.

" 'Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." ' [Citation.]  Therefore, reasonable reunification services must be offered to a parent." (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.)  The agency "must make a good faith effort to develop and implement reasonable services responsive to the unique needs of each family ... in spite of difficulties in doing so or the prospects of success." (*Ibid.*)  "The adequacy of the reunification plan and of the agency's efforts to provide suitable services is judged according to the circumstances of the particular case." (*Ibid.*)  We review the juvenile court's order with regard to the sufficiency of reunification services under the substantial evidence standard.  (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)  We resolve all conflicts in support of the juvenile court's determination, examine the record in a light most favorable to the juvenile court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order.  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379.)

Mother contends that the reunification services she was provided were unreasonable primarily because they did not adequately address her mental health issues.

---

**4**     Because we do so, we deny respondent's October 26, 2020, motion to dismiss the appeal.

Mother's case plan included two elements addressing her mental health. The first, through Telecare, with whom mother was already receiving services. Mother indicated in December 2019 that she had a case manager and a physician for a medication assessment and management. In order to facilitate coordination and evaluation of mother's mental health services, mother was directed to sign a release of information form. Mother failed to do so, making it impossible for the social worker to receive information from mother's Telecare case manager and physician.

A second element of mother's mental health service plan was for counseling through Sierra Vista, which was to target, among other issues, parenting skills, coping skills, her mental health diagnosis, and anger management. While mother was referred to Sierra Vista on December 30, 2019, she failed to attend her first intake appointment February 11, 2020. Mother did attend a rescheduled first intake appointment on February 18, 2020, but then did not attend the second intake appointment until June 4, 2020, just a month before the six-month review hearing. She had not attended any counseling sessions. The services were in place to assist mother in her mental health issues, but she failed to take advantage of them.

" 'Reunification services are voluntary ... and an unwilling or indifferent parent cannot be forced to comply with them.' [Citations.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365.) Reunification services are not inadequate simply because the parent is unwilling or indifferent. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220; see also *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5 [social worker is not required to "take the parent by the hand and escort him or her to and through" services].)

Here, substantial evidence supports the conclusion that mother's own unwillingness or indifference to participating in reunification services and not any failure on the part of the agency is responsible for her lack of adequate mental health services. The juvenile court did not err by finding that the reunification services the agency made available to mother were reasonable, even though she chose not to avail herself of them.

9.

## DISPOSITION

The July 1, 2020, order of the juvenile court is affirmed.