Filed 10/13/25  B.H. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| B.H., |  |
| Petitioner, | E086456 |
| v. | (Super.Ct.No. DPRI2300362) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; |  |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, |  |
| Real Party in Interest. |  |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Walter H. Kubelun, Judge.  Petition Denied.

Raymond Ribaya for Petitioner.

No appearance for Respondent.

1

Minh C. Tran, County Counsel, and Teresa K.B. Beecham and Julie Jarvi, Deputy County Counsel for Real Party in Interest.

## I.

## INTRODUCTION

B.H. (Father) petitions for extraordinary relief pursuant to rule 8.452 of the California Rules of Court seeking to set aside the orders of the juvenile court at the 18-month review hearing terminating reunification services and setting a Welfare and Institutions Code[1] section 366.26 hearing as to his 16-year-old daughter K.H. and 13-year-old son D.H.  Father claims the juvenile court erred in finding the Riverside County Department of Public Social Services (DPSS) provided him with reasonable reunification services.  Father asks this court to issue a writ directing the juvenile court to vacate its orders, terminating his reunification services and setting a section 366.26 hearing and to order an additional six months of reunification services for him.  We find no error and deny the petition.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of DPSS on September 19, 2023, after an immediate response referral was received with allegations of general and severe neglect of then 14-year-old K.H. and 11-year-old D.H.  It was reported that Mother's home was " 'disgusting' " and there was a roach infestation due to garbage and rotting and leftover

---

[1] All statutory references herein are to the Welfare and Institutions Code unless otherwise noted.

food scattered around the apartment. Mother was unwilling to improve the conditions in the home. The social worker observed pictures of the home which showed that the laundry room had no way of walking into it due to large trash bags, clothes, and hangers. The kitchen had boxes piled up high towards the ceiling and there were items and trash cluttered throughout the house. The living room had piles of clothes and trash bags approximately three to four feet high. One bathroom could not be entered due to piles of trash, stacked boxes, and broken shelving. Mother had refused the landlord, pest control and police to access the home. In addition, the children were not enrolled in school and their medical needs were being neglected by Mother. Following DPSS's investigation, the children were placed into protective custody. Law enforcement had to climb over trash after opening the front door to retrieve the children as there was no space on the ground to walk. The children were eventually placed with their paternal grandmother.

Father had been incarcerated since 2018 on charges of murder, attempted murder, domestic violence, attempted robbery, discharging a firearm, using a firearm, and discharging a firearm causing great bodily injury. Father's next criminal court hearing was in November 2023, and the trial readiness hearing was set for April 5, 2024. Father had no tentative release date. The social worker met with Father at the West Valley Detention Center. Father did not agree with the children's removal, and stated that the children would be " 'good' " if they were given vitamins. He said he had daily communication with Mother and the children, and no one had notified him of anything. He argued with the social worker that nothing was wrong with where the children resided

and appeared to be frustrated towards the end of the conversation "further making threats."

On September 26, 2023, a petition was filed on behalf of the children pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The children were formally detained the following day at the detention hearing and the parents were provided with supervised visits and services pending the jurisdictional and dispositional hearing. A first amended petition was filed on November 3, 2023.

The social worker met with Father again on October 11, 2023. Father's attorney did not authorize Father to be interviewed as to the allegations. Father, however, presented as cooperative and forthcoming with information pertaining to the children's medical and educational needs. Father reported that he was no longer in a relationship with Mother, and upon his release he did not plan on maintaining a relationship with her.

On November 3, 2023, at the jurisdictional/dispositional hearing, the juvenile court found true the allegations in the amended petition as modified, declared the children dependents of the court, and provided the parents with reunification services and supervised visits. Father's case plan consisted of parenting education and individual counseling and visitation upon his release from jail.

By the six-month review hearing, DPSS recommended continuing Father's services for an additional six months. Father was still incarcerated with an unknown release date and had been unable to complete any services. Mother had limited contact with DPSS. Meanwhile, the children had remained stable with their paternal

grandmother and had developed a healthy attachment to her. The children reported feeling safe and secure in their grandmother's home.

On May 3, 2024, at the six-month review hearing, the juvenile court continued reunification services for Mother and Father.

On July 24, 2024, Father in pro per filed a motion to dismiss the case and release the children to Mother based on alleged due process violations. The court denied the motion following a hearing on August 23, 2024.

By the 12-month review hearing, DPSS recommended the court continue Mother and Father's reunification services. Father remained incarcerated with an unknown release date. During this reporting period, DPSS submitted a correspondence parenting referral on behalf of Father. The West Valley Detention Center, where Father was incarcerated, did not return any of the social worker's calls regarding services offered in the facility. Upon Father's release, services would be submitted on his behalf. The social worker reported that the West Valley Detention Center had been on lockdown multiple times prohibiting any in-person visits. Father, however, had telephonic visits with the children. DPSS contacted Father to address his case plan progress, concurrent planning, and services and needs on August 30, September 11, 18, and 25, and October 2, 2024. Mother completed her case plan, she had limited contact with DPSS and remained unhoused. Meanwhile, the children continued to thrive in their paternal grandmother's home who had provided them with a stable and nurturing environment. The children were reported to be making significant progress in their physical, emotional, educational, and social development.

At the November 19, 2024, 12-month review hearing, the juvenile continued reunification services for Father and Mother.

In March 2025, DPSS reported that it was verified that the West Valley Detention Center did not offer services. The children had no contact with Father during the reporting period. A correspondence-based referral had been submitted on Father's behalf, but DPSS had been unable to confirm whether Father received the packet.

In June 2025, the children reported that phone contact with Father had resumed. The paternal grandmother had discussed the children's concerns with telephonic visits with Father and following that conversation Father's behavior changed. The children expressed their willingness to participate in phone visits with Father. When the children chose not to engage in conversation with Father, they would communicate their wishes to either Father or the paternal grandmother.

By the 18-month review hearing, DPSS recommended terminating services. The 18-month review hearing was held on July 2, 2025. At that time, the juvenile court found, by clear and convincing evidence, that the parents failed to participate regularly and make substantive progress in their court-ordered treatment program, and there was no substantial probability that the children would be returned if given another six months of services. The court found that reasonable services were provided and set a section 366.26 hearing to select the most appropriate permanent plan for the children.

On July 23, 2025, Father filed a notice of intent to file writ petition. In his petition, he declared that he continued to be detained at the West Valley Detention Center.

DISCUSSION

Father contends the juvenile court erred in finding DPSS provided him reasonable services. Under the circumstances of this case, we disagree.

Section 361.5 expressly requires reunification services to be provided to incarcerated parents, absent a finding on the basis of clear and convincing evidence that it would be detrimental to the child. (§ 361.5, subd. (e)(1).) "That section reflects a public policy favoring the development of a family reunification plan even where a parent is incarcerated." (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69; accord, *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011-1012, superseded by statute on another ground as indicated in *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504.) The consequences of failing to provide such services are inevitable: "If a parent cannot avail himself or herself of reunification services because of incarceration, it is a fait accompli that the parent will fail to comply with the service plan." (*In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1402 (*Brittany S.*).)

"The focus of California's dependency system during the reunification period is to 'preserve the family whenever possible.' " (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 420 (*Patricia W.*).) Accordingly, " '[c]ourts may not initiate proceedings to terminate parental rights unless they find adequate reunification services were provided to the parents, even when the parents are incarcerated.' " (*In re Maria S.* (2000) 82 Cal.App.4th 1032, 1039 (*Maria S.*).) " ' "The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success.' " "

(*Ibid.*)  "While 'use a gun, go to prison' may well be an appropriate legal maxim, 'go to prison, lose your child' is not."  (*In re Brittany S.*, *supra*, 17 Cal.App.4th at p. 1402.)

When a child is removed from a parent's custody, the social services department must make a good faith effort to develop and implement reasonable family reunification services responsive to the needs of that family.  (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254.)  "The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case. . . . 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success.  [Citation.]' . . . '[T]he record should show that the [department] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the [parent] during the course of the service plan, and made reasonable efforts to assist the [parent when] compliance proved difficult . . . .' "  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

At the permanency review hearing held within 18 months after the date the child was originally removed from the physical custody of their parent, "the court shall order the return of the child to the physical custody of their parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  (§ 366.22, subd. (a)(1).)  In addition, "[t]he court shall determine by clear and convincing evidence whether reasonable services have been offered or provided to the parent or legal guardian."  (§ 366.22, subd. (a)(3).)  Moreover, "The court shall not order that a hearing pursuant to

8

Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian." (§ 366.22, subd. (b)(3)(C)(iii).) Services for an incarcerated parent may include, but shall not be limited to, the following: "(A) Maintaining contact between the parent and child through collect telephone calls. (B) Transportation services, when appropriate. (C) Visitation services, when appropriate. (D)(i) Reasonable services to extended family members or foster parents providing care for the child if the services are not detrimental to the child." (§ 361.5, subd. (e)(1).) Furthermore, "[a]n incarcerated . . . parent may be required to attend counseling, parenting classes, or vocational training programs as part of the reunification service plan if actual access to these services is provided." (§ 361.5, subd. (e)(1)(D)(ii).)

We review the juvenile court's finding that reasonable services were offered and provided for substantial evidence. (*Patricia W.*, *supra*, 244 Cal.App.4th at p. 419; *Maria S.*, *supra*, 82 Cal.App.4th at p. 1039.) " 'All reasonable inferences must be drawn in support of the findings and the record must be viewed in the light most favorable to the juvenile court's order.' " (*Maria S.*, at p. 1039.) If substantial evidence supports the juvenile court's finding, we will not disturb it. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Moreover, under our review, services need not be perfect to be reasonable. Rather, the "standard is . . . whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) Since Father bears the burden of demonstrating error on appeal, he must show that the juvenile court's

9

reasonable services finding is not supported by substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)

Here, Father has not met his burden to overcome the presumption we must make as a reviewing court. There is substantial evidence to support the finding that the services that were provided to Father were reasonable. The juvenile court correctly considered the reasonableness of DPSS's efforts concerning services offered to Father while he was incarcerated at West Valley Detention Center.

Father's case plan consisted of parenting education and individual counseling. The record demonstrates as to what services were available and offered to Father. A correspondence parenting referral was submitted on Father's behalf and Father's counsel acknowledged that the correspondence parenting class was sent to Father. However, Father's detention facility did not offer services. Because Father's facility did not offer services, and because initially the facility did not return any of the social worker's calls regarding services offered in the facility, the social worker reported that services would be provided to Father upon his release.

Father was in custody awaiting trial on serious criminal charges, including murder and attempted murder. Father had been incarcerated for years, remained incarcerated throughout the entire dependency matter, and had no confirmed release date. Father had been incarcerated since 2018. At the 18-month review hearing, Father's counsel informed the juvenile court that Father's release date was unknown. In addition, visitation was provided to Father. Although for a period of time the children had no contact with Father, by June 2025, the children reported to the social worker that phone

10

contact with Father had resumed, and they expressed their willingness to participate in phone visits with Father.

Father made no argument below, nor introduced any evidence, that services were available in the detention facility, or that DPSS in any way hindered his ability or efforts to obtain services. So, we cannot second-guess the juvenile court on this question and say on the limited record before us DPSS acted unreasonably.

Father relies on *Maria S.*, *supra*, 82 Cal.App.4th 1032, in which the appellate court reversed termination of parental rights. In *Maria S.*, the mother gave birth to her daughter while she was in prison. Her service plan stated that she would begin the reunification process after her release from custody, and noted because of her incarceration, many of the services contemplated would have to await her release. (*Id.* at pp. 1038-1040.) After she was released, she was deported, but she continued to maintain regular contact with the social worker and attempted to obtain a visa so that she could attend the permanency planning hearing. (*Id*. at p. 1038.)

Here, in contrast, there is evidence in the record as to what services were available and offered to Father. Furthermore, unlike *Maria S.*, the evidence here shows that Father's detention facility did not offer services. As such, the social worker reported that services would be provided to Father upon his release. In *Maria S.*, there was no evidence as to why the agency planned to wait until the mother was released from incarceration to provide her with services. Moreover, unlike *Maria S.* where the mother was to be deported upon her release, there was no evidence in this case to show that the plan was for Father to be deported upon his release from incarceration. Also, unlike

*Maria S.*, Father here had been incarcerated for years, remained incarcerated throughout the entire dependency matter, and had no confirmed release date. *Maria S.* is not helpful to his position.

Under these circumstances, there is substantial evidence to support the juvenile court's findings by preponderance of the evidence that reasonable services were offered or provided to Father. Because of Father's actions that resulted in his incarceration for years, he was unable to participate in services or make progress with his court-ordered service plan. Considering DPSS's limited ability to provide services in this case, the services that it provided were reasonable under the circumstances. Father has not shown that the juvenile court erred in setting a section 366.26 hearing.

IV.

DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

12